UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 21-CR-5 (BHL)

JOHN D. WHELAN,

        Defendant.

---

## UNITED STATES' MEMORADUM OF LAW
## IN SUPPORT OF REQUEST FOR IN-PATIENT PSYCHIATRIC EXAMINATION

---

The United States of America, by and through its attorneys, Gregory J. Haanstad, United States Attorney, and Julie Stewart and Kevin Knight, Assistant United States Attorneys, hereby respectfully submits this memorandum in support of its request that Defendant Whelan be committed into the custody of the Attorney General for purposes of an in-patient examination assessing both his sanity and competency.

***

Defendant Whelan is a trained psychiatrist. Prior to his indictment, he was making hundreds of thousands of dollars: half in legitimate paychecks from a legitimate psychiatric practice he worked on weekdays, and the other half, in cash, from the drug-dealing he did by writing prescriptions on Saturdays from the basement of a house in Fond du Lac.

Now, a few months before trial, Defendant Whelan has produced a report from Dr. Gerald Shiener. Dr. Shiener claims Defendant Whelan (i) is incompetent and (ii) was not sane at the time of the instant offenses.

The parties agree that, given Dr. Shiener's report, the Court should order an additional psychiatric examination, addressing both Defendant Whelan's sanity and competency, in advance of a formal competency hearing.

The parties disagree as to the form of the contemplated examination.

Defendant Whelan suggests that an additional out-patient evaluation would be sufficient, particularly given the already completed report of Dr. Shiener.

He is mistaken.

Defendant Whelan's case cries out for in-patient evaluation by the professionals at the Bureau of Prisons ("BOP") because, *inter alia*:

- In-patient examinations by BOP psychologists offer various diagnostic advantages that would be especially useful here. As explained in the attached declaration of Dr. Dia Boutwell, Chief of Psychological Evaluations at the BOP, in-patient competency evaluations at the BOP provide "unique" and "thorough" observational opportunities, both formal and informal, by highly trained staff, who regularly perform this sort of forensic work. *See* Exhibit 1, Declaration of Dr. Dia Boutwell.

- This case presents a particular risk of malingering, given (i) the timing of the onset of Defendant Whelan's ostensible symptoms; (ii) the potentially significant penalties associated with conviction; and (iii) Defendant

2

Whelan's own training as a psychiatrist. And as Dr. Boutwell explains, the multi-faceted, comprehensive nature of an in-person BOP competency evaluation is "especially" helpful "if the issue of malingering is suspected."

- The out-patient analysis performed thus far has been inadequate. As Dr. John Pankiewicz explains in his attached declaration, Dr. Shiener's evaluation of Defendant Whelan was "insufficient" to support the diagnosis he reached. *See* Exhibit 2, Declaration of Dr. John Pankiewicz. Indeed, Dr. Shiener "did not conduct the types of cognitive assessments that would be required to reach a conclusion of cognitive impairment," instead utilizing "screening tests . . . which lack internal measures of validity." And these missing "internal validity measures are critical when assessing competency and mental status, particularly in criminal cases where feigning incapacity is of particular concern."

- Indeed, Dr. Pankiewicz was able to opine that, given "the facts of the case and the information provided in Dr. Shiener's report," it was his "medical opinion that a comprehensive, in-patient assessment at a Federal Medical Center, which has the ability to conduct a battery of valid tests as well as observe Dr. Whelan for a significant period of time, would provide the most medically valid assessment of his competency and mental status at the time of the alleged offenses."

At bottom, the Court must have confidence in its assessment of Defendant Whelan's competency to proceed. The experts agree that an in-patient BOP evaluation provides the best chance for exactly that.

The Court should order the same.

\*\*\*

I. **Background**

Defendant Whelan (a medical doctor) and his co-defendant Tina Montezon (a nurse) saw "patients" at a fraudulent "clinic" set up in Defendant Montezon's house on Saturdays beginning in 2018. At this fraudulent "clinic," the defendants collected cash in exchange for prescriptions for controlled substances. Individuals were given these prescriptions without any medical analysis and without a physical or mental examination. Indeed, some individuals simply picked up pre-signed prescriptions in exchange for cash without seeing Defendant Whelan at all. For his part, Defendant Whelan deposited approximately $285,000 in proceeds generated from this fraudulent "clinic" into his personal bank accounts from January 2018 to October 2020.

Given that misconduct, the defendants were indicted for conspiring to distribute controlled substances outside the course of a professional medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1); and making false statements to federal agents, in violation of 18 U.S.C. § 1001. *See* Dkt. No. [1]. They were arraigned in January 2021 and pled not guilty. *See* Dkt. No. [5].

Magistrate Judge Nancy Joseph then designated the case complex, Dkt. No. [9], and set a pretrial motions deadline of June 25, 2021, Dkt. No. [14].

No motions were filed by this June 2021 deadline, and the referral to Magistrate Judge Joseph ended on July 13, 2021. *See* Minute Entry of 7/13/2021.

After some false starts relating to expert witness issues, this Court set a trial date of February 27, 2023. *See* Dkt. No. [62].

On October 25, 2022, Defendant Whelan's counsel sent government counsel correspondence expressing Defendant Whelan's intention to raise an insanity defense at trial. Appended to defense counsel's letter was a report by Dr. Gerald Shiener, who concluded that (i) Defendant Whelan was not able to understand the nature and quality or the wrongfulness of the misconduct described in the indictment; and (ii) Defendant Whelan was not competent to stand trial in this matter.

The parties conferred regarding this correspondence on October 26, 2022, and October 31, 2022.

On October 31, 2022, Defendant Whelan's counsel filed the Notice, which reflects his intention to raise an insanity defense at trial. *See* Dkt. No. [65]. The Notice does not address Dr. Shiener's conclusion that Defendant Whelan is not competent to stand trial. *Id.*

On November 1, 2022, the Court asked the government to file a response to the Notice. *See* Dkt. No. [66]. The government was specifically instructed to address whether it objects to the Notice as untimely and what effect, if any, the Notice has on the February 2023 trial date. *Id.*

On November 11, 2022, the government filed a combined Motion for Psychiatric Examination and Response to Defendant Whelan's Insanity Notice. *See* Dkt. No. [67]. The government explained that in light of Dr. Shiener's report, it believed the Court should (i) order a psychiatric evaluation of Defendant Whelan, to determine both his competency and his capacity to understand the nature and quality or the wrongfulness of his conduct; (ii) forego ruling on the Notice's timeliness until Defendant Whelan's competency hearing is completed; and (iii) set a counsel-only status conference in the coming days to discuss these issues, as the current trial date likely cannot stand given recent developments.

The Court held the requested status conference on November 29, 2022. *See* Dkt. No. [72]. The Court struck the trial dates, entertained the parties' arguments regarding the need for in-patient evaluation, set a briefing schedule concerning that issue, and scheduled a hearing for December 20, 2022. *Id.* The Court also ordered the parties to meet-and-confer regarding their positions in the interim. *Id.*

The parties met-and-conferred as ordered, both telephonically and via e-mail.

No agreement was reached, and this memorandum follows.

**II.     Argument**

The parties agree that an additional evaluation of Defendant Whelan's competency and sanity is required. *See generally* Dkt. No. [72].

The parties further agree that even though Defendant Whelan is not otherwise confined, the Court "may" order him committed to a suitable facility for a reasonable period to secure that evaluation. *See id.*; *see also* 18 U.S.C. § 4247(b).

6

The parties disagree as to whether a commitment for in-person evaluation would be a sound exercise of the Court's discretion.

The government believes that given the facts here—a defendant-psychiatrist professionally trained on the implicated psychological examinations, who has every incentive to malinger and who only alerted the Court to these issues once trial was imminent—the comprehensive, multi-focal, longitudinal evaluation offered by the BOP is especially appropriate.

A.   **The Experts Support an In-Person BOP Evaluation**

Dr. Dia Boutwell, Chief of Psychological Evaluations at the BOP, has offered a sworn declaration to the Court, which outlines the benefits of in-patient competency evaluations at the BOP. Dr. Boutwell avers that BOP in-patient evaluations provide "unique" and "thorough" observational opportunities, both formal and informal, by highly trained staff, who regularly perform this sort of forensic work. *See* Exhibit 1, Declaration of Dr. Dia Boutwell.

Dr. Boutwell also explains that because in-person BOP evaluations necessarily implicate "multiple interactions with multiple people over multiple points in time, as contrasted with one or two points in time with one psychologist," as one would find in an out-patient setting, in-person BOP evaluations "allow[] for a much more accurate determination of any existing mental health concerns and/or . . . malingering." *Id.*

Dr. John Pankiewicz goes even further in his declaration, concluding that given "the facts of the case and the information provided in Dr. Shiener's report," it is his "medical opinion that a comprehensive, in-patient assessment at a Federal Medical

7

Center, which has the ability to conduct a battery of valid tests as well as observe Dr. Whelan for a significant period of time, would provide the most medically valid assessment of his competency and mental status at the time of the alleged offenses." *See* Exhibit 2, Declaration of Dr. John Pankiewicz.

**B.      Case Law Supports an In-Person BOP Evaluation**

The government believes that *United States v. Evans*, No. CR 5:20-127-KKC, 2021 WL 1852943, at *1 (E.D. Ky. May 10, 2021), is instructive here.

In that matter, Defendant Evans was charged with relatively sophisticated white-collar crimes and not detained pending trial. *See United States v. Evans*, No. CR 5:20-127-KKC, Dkt No. [11] (E.D. Ky. Nov. 11, 2020). Counsel eventually moved for a competency hearing, and that motion was granted. *Id.* at Dkt No. [29].

In advance of that competency hearing, the Court ordered that the defendant self-surrender to a BOP facility for an in-person competency evaluation, even though the defendant was not otherwise confined at the time. *Id.* at Dkt No. [40].

After conferring with BOP to identify an appropriate facility and surrender date, the Defendant's in-person BOP evaluation was completed; he was released; and the Court held a competency hearing. *Id.* at Dkt. No. [57].

During that hearing, the Court considered diverging opinions as to defendant's competency rendered by, *inter alia*, a BOP psychologist who participated in the defendant's in-person evaluation and a private psychologist who performed an out-

patient evaluation. *See United States v. Evans*, No. CR 5:20-127-KKC, 2021 WL 1852943, at *1 (E.D. Ky. May 10, 2021).

The Court accorded "significant weight" to the BOP expert's opinion, "over that" of the doctor who performed the out-patient evaluation. *Id.* The Court explicitly noted that the BOP expert's "examination was based on more personal interaction, spaced across different days, and supplemented with weeks of evaluation while [defendant] was in the BOP's custody. This yielded a longitudinal aspect that [the out-patient expert's] one-off session does not reflect." *Id.* at *3.

*Evans* is obviously not controlling, but it is persuasive. Indeed, *Evans* reflects a United States District Judge endorsing what Dr. Pankiewicz and Dr. Bowell have also explained: in-person BOP evaluations are demonstrably preferable to out-patient evaluations when assessing the competency of sophisticated, potentially malingering defendants.

### C. Dr. Shiener's Position is Inapposite

At the November 29 status conference, defense counsel suggested that because the Court already had the benefit of Dr. Shiener's report, the need for an in-patient BOP evaluation was less acute.

The government disagrees, for a few reasons.

First, as Dr. John Pankiewicz noted in his attached declaration, Dr. Shiener's evaluation of Defendant Whelan was "insufficient" to support the diagnosis he reached. *See* Exhibit 2, Declaration of Dr. John Pankiewicz. Indeed, Dr. Shiener "did not conduct the types of cognitive assessments that would be required to reach a conclusion of

9

cognitive impairment," instead utilizing "screening tests . . . which lack internal measures of validity." And these missing "internal validity measures are critical when assessing competency and mental status, particularly in criminal cases where feigning incapacity is of particular concern."

And this is not the first time Dr. Shiener's analysis has missed the mark. *See Baker-Schneider v. Napoleon*, No. CV 15-12897, 2018 WL 1326296, at *9 (E.D. Mich. Mar. 15, 2018), *rev'd on other grounds*, 769 F. App'x 189 (6th Cir. 2019) (district court "does not find the opinions of Plaintiff's experts, Drs. Gerald Shiener and Alvin Cohn, persuasive," as their "opinions have little probative value due to two significant defects in their analysis"); *Gohl v. Turbiak*, No. 335389, 2018 WL 2067796, at *10 (Mich. Ct. App. May 3, 2018) ("Even if Shiener's report could be considered [i.e., were not hearsay], his expert opinion is conclusory, unsubstantiated, and based on facts contrary to the record.).

Dr. Shiener's report constitutes "reasonable cause" sufficient to implicate a competency hearing. *See* 18 U.S.C. § 4241(a). But given Dr. Shiener's history and the flaws in his analysis identified by Dr. Pankiewicz, Dr. Shiener's report is not grounds to abstain from the best possible competency evaluation available here.

**IV.    Conclusion**

The government agrees that all reasonable steps should be taken to ensure that Defendant Whelan's commitment to the BOP for an in-person evaluation is minimally disruptive to his life and defense of this case. The parties should confer with the BOP, the Court, and each other regarding the appropriate facility of commitment, a suitable surrender date, and similar logistical issues.

But make no mistake: Defendant Whelan should be committed.

Competency is a first-order question that must be resolved before any other issues in the case can be addressed. An in-person BOP evaluation gives the Court the best tools available to answer that same question.

In contrast, another out-patient evaluation would implicate substantial delays, while not necessarily resolving the issue.

The Court should choose the more expeditious and thorough option, which is explicitly contemplated by statute.

Dated at Milwaukee, Wisconsin, this 6th day of December, 2022.

                Respectfully submitted,

                Gregory J. Haanstad
                United States Attorney

By:   */s Kevin Knight*

                Julie Stewart
                Kevin Knight
                United States Attorney's Office
                517 E. Wisconsin Ave - Rm 530
                Milwaukee, WI 53202
                Phone: 414.297.1700