UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 21-CR-5 (BHL)

JOHN D. WHELAN,

        Defendant.

## UNITED STATES' REPLY BRIEF
## IN SUPPORT OF REQUEST FOR INPATIENT PSYCHIATRIC EXAMINATION

The United States of America, by and through its attorneys, Gregory J. Haanstad, United States Attorney, and Julie Stewart and Kevin Knight, Assistant United States Attorneys, hereby respectfully submits this reply brief in support of its request that Defendant Whelan be committed into the custody of the Attorney General for purposes of an inpatient examination assessing both his sanity and competency.

\*\*\*

An inpatient psychiatric evaluation of Defendant Whelan will provide the Court with the most accurate assessment of his competency to stand trial and his sanity at the time of the charged conduct.

And there is a particular need for an inpatient evaluation here because (i) Defendant Whelan—a trained psychiatrist who only reported symptoms shortly before trial—presents an acute malingering risk; (ii) inpatient evaluations are especially useful

in parsing out malingering patients; (iii) Defendant Whelan's evaluation will be complex, insofar as he presents both competency and sanity concerns; and (iv) an inpatient evaluation will bring the most expeditious resolution to these issues, allowing this long gestating case to finally proceed to trial.

By the government's lights, the Court should find that these issues are sufficiently compelling to justify remanding Defendant Whelan into the Attorney General's custody for an inpatient psychiatric evaluation.

Defendant disagrees, but his response brief distorts both the record and precedent.

The government accordingly submits this reply brief, which summarizes the relevant inquiry and identifies deficiencies in Defendant Whelan's submission.

*** 

## I. The Question Presented is a Matter of Discretion

The government previously explained that the question of whether to commit a pretrial defendant to the Attorney General's custody for a psychiatric evaluation is left to the Court's sound discretion. *See* Dkt. No. [73] at *7.

Case law supports this position. *See United States v. Deters*, 143 F.3d 577, 579 (10th Cir. 1998) ("The district court . . . has the discretion to confine a defendant during the examination period."); *United States v. McDonald*, No. CRIM. 09-656-01 SDW, 2012 WL 4659242 at *2 (D.N.J. Oct. 1, 2012) ("It is within the court's discretion to commit the defendant to a suitable facility for the psychiatric examination ('custodial' or 'inpatient' evaluation) or, alternatively, to order an outpatient evaluation.").

Of course, that discretion is not totally unfettered. Before remanding the defendant for an inpatient examination at the Bureau of Prisons ("BOP"), the Court should confirm that the government's request for the same is grounded in a "sufficiently compelling" rationale. *Deters*, 143 F.3d at 583 (quoting *United States v. Salerno*, 481 U.S. 739, 748 (1987)).

The instant request clears this threshold.

## II. "Sufficiently Compelling" Interests Justify an Inpatient BOP Evaluation Here

The government believes that there are multiple independent (and mutually reinforcing) compelling interests that justify its request for an inpatient evaluation of Defendant Whelan.

For the sake of convenience, those interests are addressed in turn below.

### A. An Inpatient BOP Evaluation Will Produce a More Accurate Report

The government has already adduced separate declarations from Dr. Dia Boutwell and Dr. John Pankiewicz,[1] each of whom explained that inpatient evaluations by the BOP are uniquely thorough and professional. *See* Dkt Nos. [73-1], [73-2]. Indeed, Dr. Pankiewicz noted that in his "medical opinion," a "comprehensive, inpatient assessment at a Federal Medical Center, which has the ability to conduct a battery of valid tests as well as observe Dr. Whelan for a significant period of time, would provide the most

---

[1] The government notes that during the November 29, 2022, status conference, the Court informed the parties that defendant was not obligated to produce Dr. Shiener at the upcoming December 20, 2022, hearing. *See* Dkt. No. [71] at 25:37-27:00. The government presumes that Dr. Boutwell and Dr. Pankiewicz are similarly excused, given that ruling and defendant's recent submission. *See* Dkt. No. [74] at ¶ 6 ("The defense also maintains that if the testimony at an evidentiary hearing would only reiterate the declarations already filed in this matter, an evidentiary hearing is not necessary.").

medically valid assessment of his competency and mental status at the time of the alleged offenses." *See* Dkt. No. [73-2].

This interest in an especially thorough inpatient evaluation has been previously recognized as sufficient to justify remanding a defendant for psychiatric evaluation. *See United States v. Weston*, 36 F. Supp. 2d 7, 13–14 (D.D.C. 1999) ("an inpatient court-ordered examination at a federal facility" will provide the Court "with a more complete picture of the defendant's mental competency or lack thereof than the Court might otherwise have based upon a twenty-hour outpatient examination by a single expert[,]" justifying commitment).

This Court should follow suit.

**B.      An Inpatient BOP Evaluation Will Address the Risk of Malingering**

Defendant Whelan is a trained psychiatrist. Before he was charged with federal crimes in January 2021, he was able to earn hundreds of thousands of dollars between his legitimate psychiatric practice and his illicit drug trade. He had the wherewithal to collect payments associated with the latter in cash. At the time of his arrest, he had been living alone for over a decade, contributing to household expenses and taking care of himself. *See* Dkt. No. [4].

When he was interviewed by the pretrial services officer in January 2021, Defendant Whelan understood the officer's questions and provided cogent responses. *Id.* When asked about his mental health specifically, Defendant Whelan reported depressive symptoms and noted that he took Prozac for the same. *Id.* The pretrial services officer did

4

not otherwise document anything about Defendant Whelan that would suggest he was incompetent to proceed. *Id.*

Then, on October 25, 2022—almost two years after this case began and only a few months before his firm trial date—Defendant Whelan for the first time complained of serious mental health issues. On that date, defense counsel sent government counsel a letter from Dr. Shiener, who concluded that Defendant Whelan was both currently incompetent and insane at the time of the charged conduct.

This record is suggestive of malingering.

Inpatient evaluations are particularly well-suited to identifying malingering. *See* Dkt. No. [73-1] (Dr. Boutwell explaining that because inpatient BOP evaluations implicate "multiple interactions with multiple people over multiple points in time, as contrasted with one or two points in time with one psychologist," they allow "for a much more accurate determination of . . . malingering").

The risk of malingering presented by this record is therefore a sufficiently compelling reason to order an inpatient evaluation. *See also United States v. McDonald*, No. CRIM. 09-656-01 SDW, 2012 WL 4659242 at *4 (D.N.J. Oct. 1, 2012) (discussing government's concern over malingering as potential basis for granting request for inpatient evaluation).

**C.    An Inpatient BOP Evaluation Will Bring This Matter to Trial Faster**

This case has been pending for almost two years. Indeed, this case was pending for approximately twenty-one months before Defendant Whelan raised any competency

5

concerns of any kind. Precedent suggests that both facts constitute "sufficiently compelling" reasons to order an inpatient evaluation.

In *Deters*, for example, the Tenth Circuit recognized that the government's interest in avoiding additional delay was "sufficiently compelling" to justify remand for inpatient evaluation, when "almost 300 days" had passed since the defendant's indictment and defendant raised the issue of psychiatric examinations "late in the proceedings." *See United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998); *see also United States v. McDonald*, No. CRIM. 09-656-01 SDW, 2012 WL 4659242 at *2 (D.N.J. Oct. 1, 2012) (finding that government's interest in avoiding delay was sufficiently compelling to justify inpatient evaluation, as remanding defendant "to the BOP for a thirty-day psychiatric evaluation would ensure that the requisite medical evaluations are conducted swiftly and thoroughly").

The Court should similarly find that the collective interest in avoiding additional delay here is a sufficiently compelling reason to grant the government's remand request.

**D.     An Inpatient BOP Evaluation Will Efficiently Address Sanity and Competency**

Dr. Shiener has concluded that Defendant Whelan is presently incompetent, and that Defendant Whelan was insane during the instant offenses. *See* Dkt. No. [74-1]. Defendant Whelan's case therefore calls out for a dual-purpose psychiatric evaluation of both issues. *See generally* Dkt. No. [67].

And this combination counsels in favor of an inpatient evaluation. *See McDonald*, 2012 WL 4659242 at *4-5 (fact that the government bore the burden of proving competency was one compelling factor in favor of ordering an inpatient evaluation).

6

Indeed, even *In re Newchurch* – the case on which Defendant Whelan primarily relies – acknowledges that single-purpose evaluations focused on sanity alone are more well suited for out-patient evaluation. *See In re Newchurch*, 807 F.2d 404, 411 (5th Cir. 1986) ("Unlike the question of competence to stand trial, the defendant's sanity at the time of the offense is a question for the jury," such that the government's interest in a fulsome inpatient evaluation is less acute when sanity alone is at issue).

### III. Defendant's Brief is Unavailing

Defendant Whelan's response brief does not deal directly with any of these points. *See generally* Dkt. No. [73]. Instead, it largely ignores the competency issue, distorts the record, and misconstrues precedent. *Id.*

Illustrative examples are addressed in turn below.

### A. Defendant Already Agreed to an Additional Evaluation

During the November 29, 2022, hearing, Defendant Whelan's counsel agreed that another psychiatric evaluation was required. *See* Dkt. No. [71] at 4:10–5:20 (Government Counsel: "It's my understanding that the defense at this point doesn't object to a psychiatric examination of Dr Whelan" to address sanity and competency, and they agree "that cause exists to have a competency hearing after that competency evaluation is completed. I don't know that we've reached alignment as to where and how the requested psychiatric examination should take place, but as I say Judge, I think we've generally reached alignment with Dr. Whelan's counsel about the need for an evaluation and competency hearing. Subject to Your Honor's additional questions." The Court: "Thank you. Ms. Sullivan, is that all correct?" Defense Counsel: "Yes, Your Honor. The

7

gist of the disagreement is whether that evaluation should be done through a commitment order and inpatient evaluation or an outpatient evaluation by a doctor the parties can agree on.").

Given that agreement, the Court indicated that "it will order an examination." *See* Dkt. No. [71] at 5:53–6:01.

In his latest submission, however, Defendant Whelan now contends that no additional psychiatric examination should be ordered. *See* Dkt. No. [74] at ¶ 10 ("The parties do not agree the Court should order an additional psychiatric exam . . . .").[2]

This is inappropriate. An additional evaluation was ordered; the question, as the parties once recognized, is what form that evaluation should take.

**B.    Defendant Ignores the Practical Implications of his Analysis**

Defendant Whelan's response brief seemingly asks the Court to conclude that he is incompetent, based solely on Dr. Shiener's report. *See* Dkt. No. [74] at ¶ 16 (describing how Defendant Whelan is, in the defense's view, "not malingering," per Dr. Shiener's report).

If the Court takes up that invitation and concludes Defendant Whelan is indeed incompetent, the Court will be *required* to commit Defendant Whelan to the custody of the BOP for restoration proceedings. *See* 18 U.S.C. § 4241(d) (noting that after a finding of

---

[2] This is not the first time defense counsel has changed positions on this specific issue. On November 17, 2022, undersigned counsel wrote to defense counsel in advance of the status set for November 29, 2022, noting its position that Dr. Whelan "should sit for a combined competency/sanity evaluation by a BOP psychiatrist" and that the court should hold a competency hearing. Defense counsel responded that they did not object to either request. *See* Ex. 1. Defense counsel did not raise any concern with an inpatient evaluation until late in the afternoon the day before the hearing. *See* Ex. 2.

incompetency, the district court shall commit the defendant for restoration proceedings); *see also United States v. Shawar*, 865 F.2d 856, 859-860 (7th Cir. 1989).

These restoration proceedings can take up to four months. *See* 18 U.S.C. § 4241(d).

The Court should reduce the risk of this inefficiency by having Defendant Whelan's sanity and competency evaluated now, by the institution best positioned to assess the same.

## C. Defendant Misstates the Applicable Burdens

Defendant insists that "that in the absence of evidence that Dr. Whelan's commitment is *necessary*," the Court should not order an inpatient evaluation. *See* Dkt. No. [74] at ¶ 4 (citing *In re Newchurch*, 807 F.2d 404, 409 (5th Cir. 1986)) (emphasis added).

But *Newchurch* does not stand for that proposition.

In fact, *Newchurch* "actually cuts against the defendant by acknowledging that detention is permissible if it 'is *reasonably necessary* to . . . protect some other important governmental interest.'" *See United States v. Deters*, 143 F.3d 577, 583 (10th Cir. 1998) (quoting *Newchurch*, 807 F.2d at 408-09) (emphasis added).

As *Deters* explains, whatever the "precise contours of the government's burden here—whether it be demonstrating that [the accused's] detention was a narrowly tailored means of achieving a compelling government interest, or a reasonably necessary means of achieving an important government interest, as *Newchurch* holds, or some other formulation of the Due Process standard—do not alter the outcome of this case," as there are multiple sufficiently compelling reasons in this case "to justify detaining the defendant during [his] examination." *Deters*, 143 F.3d at 583.

9

Defendant also insists on this Court applying an incorrect burden of proof—clear and convincing evidence—to the determination of whether to order an inpatient evaluation. *See* Dkt. No. [74] at ¶ 5. Although *Newchurch* included language to that effect, 18 U.S.C. § 4247(b) makes no mention of "clear and convincing evidence." This is true even though Congress explicitly adopted that standard in other related statutes. *See, e.g.*, 18 U.S.C. § 4248 (addressing civil commitment of a dangerous person); 18 U.S.C. § 3142(f) (the Bail Reform Act).

There is no reason to infer that this higher burden controls where, as here, Congress was not similarly explicit—particularly since the question of whether to find a defendant incompetent (and thus subject to a mandatory period of inpatient treatment) is itself governed by the preponderance standard. *See* 18 U.S.C. § 4241(d).

**D.     Defendant Ignores the Sworn Declarations Grounding the Remand Request**

Defendant blithely insists that the "record in this case does not reveal specific factual findings on which the Court can justify committing defendant for a custodial examination." Dkt. No. [74] at ¶ 16.

This is an incredible position to take considering the previously discussed declarations, the documented delays in this case, and the objective evidence discussed above that gives rise to a reasonable suspicion that Defendant Whelan may be malingering.

### E. Defendant Invokes a Declaration That Does Not Exist

In his latest submission, Defendant Whelan suggests that inpatient evaluation is not needed because it is "not necessary to diagnose dementia and" would have adverse effects on his health. *See* Dkt. No. [74] at ¶ 22.

In support, he cites a sworn declaration from Dr. Shiener, which was ostensibly "field under Seal contemporaneously" with his response brief. *See id.* at *7, fn. 9.

No such sealed document appears on the docket in this matter, as of 9:00 AM CST on December 16, 2022.

And when undersigned counsel asked Defendant Whelan's counsel to provide this sealed document, defense counsel responded: "We are awaiting Dr Shiener declaration (sic) which is the sealed document you mentioned but I will like file (sic) unsealed as soon as we get it[.]" *See* Ex. 3.

In other words, defense counsel is simultaneously (i) inviting the Court to rely upon Dr. Shiener's unsworn October letter; (ii) citing to a declaration from Dr. Shiener that does not yet exist; and (iii) asking the Court to ignore the two sworn declarations from the government's witnesses that squarely address the relevant issues.

This is inappropriate.

## IV. Conclusion

The record here reflects multiple sufficiently compelling reasons to order an inpatient evaluation of Defendant Whelan.

The Court should find that those reasons justify the government's request and instruct the parties to meet-and-confer regarding next steps, to ensure that Defendant Whelan's inpatient evaluation is minimally disruptive to his life and defense of this case.

Dated at Milwaukee, Wisconsin, this 16th day of December, 2022.

>Respectfully submitted,
>
>Gregory J. Haanstad
>United States Attorney
>
>By: */s Kevin Knight*
>
>Julie Stewart
>Kevin Knight
>United States Attorney's Office
>517 E. Wisconsin Ave - Rm 530
>Milwaukee, WI 53202
>Phone: 414.297.1700