UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

JOHN D. WHELAN,

        Defendant.

Case No. 21-cr-0005-bhl-1

**ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL**

    On January 5, 2021, the grand jury returned a 15-count indictment against Defendants John D. Whelan, M.D. and Tina Montezon, charging them with multiple offenses related to the unlawful sale of prescription medications. (ECF No. 1.) After lengthy pretrial proceedings, Montezon signed a plea agreement, agreeing to plead guilty to three of the charges against her. The proceedings against Dr. Whelan remain pending, with trial scheduled to begin on October 16, 2023. The matter now before the Court is the government's November 11, 2022 motion to determine whether Dr. Whelan is competent to stand trial within the meaning of 18 U.S.C. § 4241(a). For the reasons stated in this Order, the Court finds that Dr. Whelan is presently competent to stand trial.

## BACKGROUND

    Dr. Whelan is a seventy-seven year old psychiatrist who resides in Fond du Lac, Wisconsin. He has been indicted on fourteen counts: (1) one count of conspiring to distribute controlled substances, including Buprenorphine, Ritalin, Xanax, and Adderall, outside the course of a professional medical practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846; (2) one count of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1); (3) eleven counts of distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); and (4) one count of making false statements to federal agents, in violation of 18 U.S.C. § 1001. (ECF No. 1.) The indictment alleges that Dr. Whelan and Montezon prescribed controlled substances outside the course of professional medical

practice from a residence located in Fond du Lac, Wisconsin, on Saturdays, in exchange for cash payments of $200 to $300 per prescription. (*Id.* at 1-8.)

On October 31, 2022, Dr. Whelan filed a notice of his intention to raise an insanity defense, pursuant to Fed. R. Crim. P. 12.2. (ECF No. 65.) The notice indicated that defense counsel had retained psychiatrist Gerald Shiener, M.D., to evaluate Dr. Whelan, and Dr. Shiener's opinions necessitated the notice. (*Id.* at 1-2.) After receiving Dr. Shiener's report, the government filed a November 11, 2022 "combined motion," asking the Court to hold a competency hearing and to order a psychiatric examination of Whelan "to determine both Defendant Whelan's competency and his capacity to understand the nature and quality or the wrongfulness of his conduct." (ECF No. 67 at 2.) On December 21, 2022, the Court ordered an examination of Whelan pursuant to 18 U.S.C. §§ 4241(b), 4242(a), and 4247(b), on an out-of-custody basis by a licensed or certified psychiatrist or psychologist. (ECF No. 80 at 4.) The Court also ordered the parties to meet and confer and endeavor to agree on a mutually acceptable psychiatrist or psychologist for the examination. (*Id.*) On January 16, 2023, the parties filed a joint status report recommending that the examination be conducted by Dr. Sara Swanson. (ECF No. 81 at 3.) On January 17, 2023, the Court appointed Dr. Swanson to conduct the evaluation. (ECF No. 82.)

On June 20, 2023, the parties filed Dr. Swanson's report under seal. (ECF No. 92.) In a joint submission dated June 23, 2023, the parties advised that they did not have any objections to Dr. Swanson's report. (ECF No. 90 at 1.) On June 26, 2023, the Court conducted a counsel-only status conference to determine next steps as it appeared that the parties had accepted Dr. Swanson's report and conclusions. (ECF Nos. 94 & 95.) At the hearing, defense counsel confirmed that the defendant did not object to Dr. Swanson's qualifications, the format of her report, the testing performed, or the sufficiency of her opinions. (ECF No. 94 at 6:30-40.) But defense counsel argued that a hearing to determine Dr. Whelan's competency was nevertheless necessary, given the competing expert opinions. (*Id.* at 6:40-7:00.) Accordingly, the Court scheduled a competency hearing, which it initially set for August 18, 2023, but later rescheduled, at defense counsel's request, to September 11, 2023. (ECF Nos. 95 & 97.)

On September 1, 2023, the parties submitted simultaneous briefs on (1) the timeliness of the defendant's invocation of the insanity defense;[1] and (2) their views of the law and evidence

---

[1] In its pre-hearing brief regarding competency, the government withdrew its objection to the timeliness of the defendant's notice of intent to rely on an insanity defense. (ECF No. 101 at 5.)

concerning Dr. Whelan's competency to stand trial. (ECF Nos. 101 & 104.) At the September 11, 2023 competency hearing, both Dr. Swanson and Dr. Shiener offered testimony and were subject to direct and cross-examination. No other witnesses were called. After the testimony was completed, the Court adjourned the hearing, with the parties' agreement, until September 15, 2023, when the parties presented their closing arguments by telephone. The parties agreed that if the Court finds Dr. Whelan competent to stand trial, the currently scheduled October 16, 2023 trial date can stand, and the parties will be prepared to proceed on that date. The parties also confirmed that if Dr. Whelan is not competent to stand trial, this Court is required, by statute, to commit Dr. Whelan to the custody of the Attorney General for a determination of whether he can be restored to competency. *See* 18 U.S.C. § 4241(d).

## LEGAL STANDARD

Consistent with the requirements of due process, a court "may not put a criminal defendant on trial unless he is competent at the time of trial." *United States v. Wessel*, 2 F.4th 1043, 1053 (7th Cir. 2021) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)); *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991) ("[D]ue process requires a defendant to be competent to stand trial."). A defendant is competent if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and . . . has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also United States v. Stoller*, 827 F.3d 591, 595-96 (7th Cir. 2016). In *Drope v. Missouri*, 420 U.S. 162 (1975), the Supreme Court further explained that competency depends on whether the defendant has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Id.* at 171. Once the issue of competency is raised, the government bears the burden of establishing a defendant's competency by a preponderance of the evidence. *United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992); *United States ex rel. Sec. and Exch. Comm'n v. Billingsley*, 766 F.2d 1015, 1022 n.10 (7th Cir. 1985). While expert testimony is valuable, the ultimate decision on whether a defendant is competent is a legal one. *See McManus v. Neal*, 779 F.3d 634, 658 (7th Cir. 2015) ("[A] defendant's competency to stand trial is a legal inquiry, not a medical inquiry, and 'the judge is the expert on what mental capabilities the litigant needs in order to be able to assist in the conduct of the litigation.'" (quoting *Holmes v. Buss*, 506 F.3d 576, 581 (7th Cir. 2007))).

The competency standard has now been memorialized in a statute. Pursuant to 18 U.S.C. § 4241(a), a defendant is competent to stand trial if he is able to: (1) "understand the nature and consequences of the proceedings against him" and (2) "assist properly in his defense." The parties agree that the first prong is not an issue. Dr. Whelan is undisputedly able "to understand the nature and consequences of the proceedings against him." The Court accepts this conceded fact. Indeed, both experts confirm that Dr. Whelan understands the role of the prosecutor, defense counsel, judge, and jury; the nature of the legal proceedings; the charges against him; a possible defense; and whether a plea agreement had been offered and his response to it. *See* ECF No. 92 at 11-13; ECF No. 103-1 at 7-9. Accordingly, the sole issue is whether Dr. Whelan can "assist properly in his defense."

## ANALYSIS

### I. The Experts Have Competing Views on Dr. Whelan's Competency.

In evaluating Dr. Whelan's competence, the Court must sort through two differing expert opinions. Counsel for Dr. Whelan presented an expert report and testimony from Dr. Gerald A. Shiener, M.D., a board-certified psychiatrist, who opined that Dr. Whelan is not competent to stand trial. Against this evidence, the Court must weigh the report and testimony of Dr. Sara J. Swanson, Ph.D., ABPP, an expert jointly selected by the parties and appointed by the Court. Dr. Swanson opines that Dr. Whelan is able to assist in his defense and is competent to stand trial. For the reasons that follow, the Court accepts Dr. Swanson's evaluation and testimony as more credible and persuasive. Based largely on Dr. Swanson's opinions, the Court finds Dr. Whelan is competent to stand trial within the meaning of Section 4241(a).

#### A. Dr. Shiener's Evaluation and Testimony

Gerald A. Shiener, M.D. earned his medical degree from Michigan State University and is board-certified in psychiatry with subspecialty psychiatry certifications in addiction psychiatry, geriatric psychiatry, forensic psychiatry, brain injury medicine, addiction medicine, consultation liaison psychiatry, and psychiatric care of the mentally ill. (ECF No. 107 at 91.) Dr. Shiener is currently the chief of psychiatry at Sinai-Grace Hospital of Detroit through the Detroit Medical Center. (*Id.* at 92.)

On September 21, 2022, Dr. Shiener performed a psychiatric evaluation of Dr. Whelan at Dr. Whelan's home. (ECF No. 103-1 at 5.) Dr. Shiener observed that Dr. Whelan's gait is slowed, his reaction time is markedly prolonged, his speech is rambling, his memory is poor for dates, his

answers are over-inclusive, and, when responding to questions, he loses his composure and becomes irritable. (*Id.* at 12-13.) Dr. Sheiner also performed three screening assessments, during the meeting: (1) the Folstein Mini-Mental State Exam, designed to evaluate the level of consciousness in the presence of delirium; (2) the Montreal Cognitive Assessment, designed to test intellectual functioning of left brain and frontal lobe function; and (3) a Frontal Assessment Battery, designed to test frontal lobe function. (*Id.* at 13-14.)

Dr. Shiener's resulting opinions are set forth in a 13-page report. (*Id.*) Dr. Shiener reports that Dr. Whelan's "cognitive testing shows marked impairments in higher level functions of impulse control, judgement, and executive function." (*Id.* at 16.) Dr. Shiener also concludes that Dr. Whelan is suffering from a neurocognitive disturbance that "interferes with his ability to remember, retrieve information, and learn new information, process it and act on it in a consensually validated way." (*Id.*) Dr. Shiener then diagnoses Dr. Whelan with "Major Neurocognitive Disorder, frontal lobe type, disinhibited and dysexecutive" that is "Frontotemporal Dementia." (*Id.* at 15, 16.) He further concludes that Dr. Whelan's neurocognitive disorder prevented him from appreciating the wrongfulness of his act at the time the alleged conduct occurred. (*Id.* at 17.) Ultimately, Dr. Shiener opines that Dr. Whelan is "unable to understand the nature and consequences of the proceedings against him, and to assist properly in his defense." (*Id.* at 16.) In arriving at these opinions, Dr. Shiener did not review any medical records, although he reserved the right to modify his opinion based on the review of such records in the future. (*Id.* at 5.)

B.  **Dr. Swanson's Evaluation and Testimony**

Sara J. Swanson, Ph.D., ABPP, earned a Ph.D. in clinical psychology from Washington State University. (ECF No. 107 at 6.) She is board-certified in neuropsychology and is currently employed at the Medical College of Wisconsin as Division Chief, where she has been on the faculty for thirty years. (*Id.* at 6-7.) In connection with this case, Dr. Swanson reviewed: audio and video files of undercover visits to Dr. Whelan on 7/25/2020, 8/22/2020, 9/19/2020, and 10/17/2020; Dr. Shiener's psychiatric evaluation of Dr. Whelan; a cover letter from Ronald Chapman II, Esq.; an investigation report by Drug Enforcement Administration; the indictment of Dr. Whelan and Tina Montezon; and medical records dating back to 2008 from St. Agnes Hospital and Fond du Lac Regional Clinic. (ECF No. 92 at 1, 5.) Dr. Swanson also met with Dr. Whelan

in two separate sessions on March 30, 2023, and May 22, 2023, in a clinical setting. (ECF No. 107 at 61.) She provided a 23-page report explaining her findings. (ECF No. 92.)

Dr. Swanson concludes that although Dr. Whelan meets the criteria for Mild Neurocognitive Disorder, the extent of his cognitive impairment does not significantly interfere with his competency to stand trial. (*Id.* at 19.) Dr. Swanson also opines that Dr. Whelan "has a reasonable degree of rational and factual understanding of his situation." (*Id.*) She further reports that Dr. Whelan has the "ability to recall and relate pertinent facts and events to testify on his behalf and to challenge prosecution witnesses," and "demonstrated intact judgment, normal verbal abstraction, fair verbal contextual memory, and intact language comprehension that will allow him to communicate with his attorney and aid in his own defense." (*Id.*)

Dr. Swanson's evaluation included a number of psychological tests administered by her staff. Dr. Whelan scored in the high average range for verbal intelligence, has average verbal abstract reasoning and fund of knowledge, and superior vocabulary. (*Id.* at 16.) Dr. Swanson noted large discrepancies, however, across various indices indicating evidence of poor or variable effort by Dr. Whelan. (*Id.* at 17.) Dr. Swanson also reported that Dr. Whelan over-exaggerated his symptoms and over-reported psychological dysfunction. (*Id.* at 16-18.)

Dr. Swanson's opinions are also based on her review of Dr. Whelan's medical records dating back to 2008. Of note, on October 31, 2020, a CT of the brain was conducted after Dr. Whelan experienced disorientation and a possible injury from a fall. The impression was "mild diffuse brain atrophy and mild senescent white matter changes in both cerebral hemispheres, no acute intracranial abnormalities." (*Id.* at 6.) An MRI of the brain was also conducted on this date and showed "no acute intracranial process." (*Id.*) Dr. Swanson notes that on January 8, 2021, Dr. Whelan's primary care physician, Dr. Johnson, noted that Dr. Whelan was "very conversive, insightful, and they had a nice discussion." (*Id.* at 10.) In June of 2021, Dr. Whelan reported problems of concentration to Dr. Johnson, who nevertheless noted that Dr. Whelan was "alert and oriented," the "[n]eurologic examination was grossly intact" and he "did not have any concerns [for Dr. Whelan's] neurologic and cognitive status as everything seems to be at baseline." (*Id.*) Dr. Whelan's physician diagnosed Whelan with exertional dyspnea (shortness of breath), diabetes mellitus type 2, hypertension, and hyperlipidemia. (*Id.* at 10-11.) Dr. Swanson also identifies multiple risk factors for Dr. Whelan's cognitive decline including hypertension, poorly controlled diabetes mellitus, hyperlipidemia, deconditioning, and alcohol consumption. (*Id*. at 18.)

## II. Based on the Totality of the Evidence, the Court Finds Dr. Whelan Competent.

The credible evidence confirms that Dr. Whelan is competent to stand trial consistent with the requirements of due process and within the meaning of section 4241(a). As noted above, both parties concede that Dr. Whelan has a rational understanding of the proceedings against him, satisfying the first half of the competency test. After weighing all the evidence concerning Dr. Whelan's mental status, the Court concludes that he possesses a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Accordingly, the Court finds that he is competent to stand trial on the charges against him. *See Dusky*, 362 U.S. at 402 (the test being whether the defendant "has a rational as well as factual understanding of the proceedings against him"); *Stoller*, 827 F.3d at 596 (same); *Wessel*, 2 F.4th at 1054 ("Mental illness does not necessarily preclude a person from being competent to stand trial.") (citing *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)).

The Court's competency finding is supported by the expert opinions of Dr. Swanson. Dr. Swanson reports that Dr. Whelan "has a reasonable degree of rational and factual understanding of his situation" and the "ability to recall and relate pertinent facts and events." (ECF No. 92 at 19.) Her evaluation also confirmed that he demonstrated "intact judgment, normal verbal abstraction, fair verbal contextual memory, and intact language comprehension that will allow him to communicate with his attorney and aid in his own defense." (*Id.*) She expresses these opinions even though there is evidence that Dr. Whelan, a trained psychiatrist, provided questionable effort during some of the testing. And, while she believes Dr. Whelan has a Mild Neurocognitive Disorder, she opines that his impairment does not significantly interfere with his competency to stand trial. (*Id.*)

These expert findings satisfy the Court that Dr. Whelan is able to consult with his counsel within the requirements of due process and Section 4241(a). He undisputedly understands the nature of the proceedings against him and, per Dr. Swanson's report, is able to recall relevant facts and can converse with counsel about them. He is also intelligent with an excellent vocabulary. These attributes more than satisfy the basic requirements for competency. To be sure, Dr. Whelan may not have a photographic memory of events and he may feel unjustly accused and have a sense of grievance against the government for being charged with the offenses in the indictment. But this does not make him unique among criminal defendants. Defense counsel may have to work with him to prepare for trial, but such is the lot of a lawyer. No client is perfect. Even if Dr.

Whelan may not have the detailed memory and demeanor that defense counsel would prefer, the evidence shows he is far more capable in assisting his attorneys than most defendants.

Defense counsel offers a variety of criticisms of Dr. Swanson and her opinions, but none of these criticisms alters the Court's conclusions. In closing argument, defense counsel attacked Dr. Swanson as being unqualified to evaluate Dr. Whelan's competence. Defense counsel insists that Dr. Shiener concluded Dr. Whelan has dementia and argues that Dr. Swanson is not qualified to oppose that opinion. She also complains that Dr. Swanson is a psychologist rather than psychiatrist. As an initial matter, these challenges are contrary to defense counsel's prior actions and statements. The Court appointed Dr. Swanson to evaluate Dr. Whelan based on the parties' *joint* recommendation. (*See* ECF Nos. 81 & 82.) If there was an issue with Dr. Swanson's qualifications, it should have been raised at that time, before defense counsel joined in recommending Dr. Swanson's appointment. Obviously, Dr. Swanson's resume and credentials have not changed since that joint recommendation. Defense counsel's complaints also run contrary to: (1) the parties' June 23, 2023 joint submission, in which Dr. Whelan's counsel advised that the defense did not have any objections to Dr. Swanson's report, (ECF No. 90); and (2) defense counsel's representations during a subsequent status conference in which she advised she had no objections to Dr. Swanson's qualifications, the format of the report, the testing that was done, or the sufficiency of the opinions. (ECF No. 94.)

Moreover, as to the merits of her objection, there is no rule that a competency evaluation must be conducted by a psychiatrist; qualified psychologists, like Dr. Swanson, are frequently retained to offer opinions on these issues. *See e.g.*, *United States v. Puerto*, 392 F. App'x 692, 709 (11th Cir. 2010) (crediting opinion of psychiatrist who evaluated defendant over a long period of time but also noting that his finding of malingering was corroborated by the testing of a neuropsychologist). Moreover, Dr. Swanson's credentials make her a good fit for this assignment. She has particular expertise in neuropsychology, which she described as the "study of brain behavior relationships and application of psychological and cognitive tests for the purpose of making differential diagnosis of neurobehavioral disorders." (ECF No. 107 at 7.) At the competency hearing, she explained she generally limits her engagements to cases in which this expertise is material; where competency is at issue due to a cognitive disorder, rather than a psychiatric disorder. (*Id.* at 8.) Her expertise is directly on point here, where the issue concerns the existence and extent of Dr. Whelan's asserted cognitive decline and whether that decline

renders him incompetent. Dr. Swanson is qualified to make a diagnosis of dementia as a board-certified clinical neuropsychologist. Indeed, as a neuropsychologist with thirty-years of experience, Dr. Swanson was amply qualified to offer an expert opinion on Dr. Whelan's cognitive functioning and competency to assist in his defense. Defense counsel's attacks on the qualifications of the parties' jointly selected expert is rejected.

The Court also notes that Dr. Swanson demonstrated good in-person demeanor in directly answering questions on both direct and cross examination. Dr. Swanson's opinions were also well-supported, being based on two interview sessions, objective testing, and an extensive review of Dr. Whelan's medical history. Her opinions were measured, and she supported them with reasonable explanations. She was not one-sided. Dr. Swanson acknowledged that Dr. Whalen was slow in responding during her interview but confirmed that he was able to communicate with her about his cognitive functioning, his background and his history. (*Id.* at 37.) She also acknowledged that he was prone to digression but was nonetheless able to provide the information she requested and showed a good memory of the details of the events leading to his indictment. (*Id.*) The Court commends her for her objectivity.

The Court thus rejects defense counsel's claim that Dr. Swanson was biased in favor of the government. Defense counsel points to Dr. Swanson's having met with the government in advance of her testimony without meeting with defense counsel. But defense counsel cites nothing that would have required Dr. Swanson to meet separately with defense counsel. Nor has defense counsel shown that she made any effort to try to set up such a meeting with Dr. Swanson and there is no evidence that Dr. Swanson avoided such a discussion. During her testimony, Dr. Swanson answered questions with a straight-forward demeanor, provided sensible responses, was never combative, and tried to be helpful to the parties and the Court. There is no evidence of bias.

The Court finds Dr. Shiener's opinions and testimony less persuasive. He is a retained expert for the defense who submitted a report diagnosing Dr. Whelan with frontotemporal dementia (FTD), a significant, rapidly progressive, early onset form of dementia. And he made this substantial diagnosis based on a much less fulsome record. Indeed, he reached this opinion without any review of Dr. Whelan's medical records and after only one short interview session with Dr. Whelan. His willingness to offer such an extreme diagnosis on such a limited record raises red flags.

Dr. Swanson explained that if Dr. Whelan had FTD, she would expect to see Dr. Whelan under the care of a neurologist and she also would expect to have seen references to symptoms of FTD in the medical records. (*Id.* at 18.) Dr. Swanson also explained that FTD typically arises in a person's late fifties and progresses rapidly—typically six years is the life span after a FTD diagnosis. (*Id.* at 19.) The medical records show no evidence of the type of behavior to be expected if Dr. Shiener's diagnosis was correct. Indeed, even after the indictment, Dr. Whelan's primary care physician described him as "insightful" and "conversive." (*Id.* at 20.)[2]

The reliability of the expert opinions is also affected by the testing each performed. Dr. Shiener administered three brief screening tests, each of which took approximately 15 minutes to conduct. In contrast, Dr. Swanson had a team of psychometrists administer clinically validated tests involving tests of intelligence, processing speed, memory, language, measures of executive functioning, measures of effort, and measures of symptom validity, and a personality questionnaire. (*Id.* at 41.) She then reviewed the test results. (*Id.* at 42.) Dr. Shiener's screening tests did not include any means of assessing whether Dr. Whelan was giving poor effort or variable effort. Dr. Swanson's clinical testing included embedded and stand-alone measures designed to test for effort. (*Id.* at 47-48.) Dr. Swanson testified that although she could not finally determine that Dr. Whelan was malingering, there was strong evidence of symptom embellishment on the symptom validity scale, leading her to conclude Dr. Whelan was overreporting his symptoms. (*Id.* at 16-17.) Dr. Swanson explained that even if Dr. Whelan were given credit on the tests where he may not have been giving full effort, at most, he had a mild cognitive disorder and slow processing. (*Id.* at 51-52, 70-71; ECF No. 92 at 15-19.) Dr. Swanson's evaluation was therefore more reliable and persuasive.

In the end, the Court does not accept Dr. Shiener's opinion that Dr. Whelan suffers from FTD. In addition to the lack of evidence in medical records, the Court also credits Dr. Swanson's discussion of the limited evidence in those records. Dr. Swanson pointed to a CT scan from October 2020 that described a mild diffuse brain atrophy, a condition Dr. Swanson noted was "pretty common with age." (ECF No. 107 at 34.) Dr. Swanson also discussed an MRI that showed

---

[2] In defense of his opinions, Dr. Shiener contends that Dr. Whelan's primary care physician was minimizing Dr. Whelan's symptoms, but the Court does not find that argument credible. The records show Dr. Whelan's physician regularly commented that Dr. Whelan was alert, oriented, and communicative. Moreover, other than Defendant Montezon who thought Dr. Whelan had some neurologic condition, Dr. Whelan's coworkers, who were interviewed about his behavior, commented on his knowledge of medicine and did not raise concerns regarding his cognitive abilities.

moderate brain paraenchyma atrophy. (*Id.*) Dr. Swanson did not offer a specific conclusion but noted that the atrophy described was not consistent with the atrophy one would expect to observe with a diagnosis of FTD. (*Id.* at 34-35.) A diagnosis of FTD is thus not credibly supported by Dr. Shiener's one visit with Dr. Whelan, with no historical basis or corroborating medical evidence.[3] The Court credits Dr. Swanson's conclusion that moderate atrophy would be consistent with mild cognitive impairment but also noted that could be attributable to heavy alcohol use. (*Id.* at 37.)

Defense counsel directs the Court to *Wilson v. United States*, 391 F.2d 460 (D.C. Cir. 1968) as support for her contention that Dr. Whelan lacks the "present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky*, 362 U.S. at 402. That case is not on point. In *Wilson*, the defendant suffered from permanent retrograde amnesia caused by the impact from a collision after a police chase. *Wilson,* 391 F.2d at 461. As a result, the defendant had no recollection of any of the events alleged in the indictment. *Id.* at 461-62. The district court found that the defendant was competent to stand trial, but the D.C. Circuit remanded "for more extensive post-trial findings on the question of whether the [defendant's] loss of memory did in fact deprive him of the fair trial and effective assistance of counsel to which the Fifth and Sixth Amendments entitle him." *Id.* at 463. The D.C. Circuit identified six factors to consider in determining whether a defendant's amnesia precluded a fair trial, but, even so, agreed that even amnesia did not *per se* render an accused incompetent. *Id.* at 463-64. It held that a loss of memory would bar prosecution "only when its presence would in fact be crucial to the construction and presentation of a defense." *Id*. at 462.

Dr. Whelan's situation is far different. He does not suffer from amnesia and defense counsel does not contend otherwise. Indeed, the defendant in *Wilson* was unable to remember events surrounding his alleged crime. Here, Dr. Whelan was able to describe to Dr. Swanson the circumstances leading to his indictment. (ECF No. 92 at 11-13.) While Dr. Whelan is considered by both experts to be a "poor historian," that is far removed from a case where the defendant has no recollection of any of the events alleged in the indictment.

Defense counsel also seizes upon comments Dr. Whelan made about his multiple marriages. During the interview with Dr. Shiener, Dr. Whelan stated he had been married "[a]bout

---

[3] Dr. Shiener also opined that due to FTD, Dr. Whelan was also unable to appreciate the wrongfulness of his acts. (ECF No. 103-1 at 17.) Defense counsel is no longer relying on this portion of Dr. Shiener's evaluation, further lessening the evaluation's overall credibility and persuasiveness.

a dozen times." (ECF No. 103-1 at 8). During his interview with Dr. Swanson, he similarly responded to a question about his marriages by declining to answer and quipping that "[i]t sounds ridiculous if I say any numbers." (ECF No. 92 at 14.) Far from demonstrating incompetence, these flippant responses show a quick wit and self-awareness. The Court does not accept that these answers demonstrate that Dr. Whelan does not really know how many times he has been married.

At oral argument, defense counsel contended it is vital for Dr. Whelan to be able to take the witness stand, review medical records, and explain to the jury whether he was administering medications according to a standard of care. The Court offers no opinion on whether Dr. Whelan should testify, but there is no evidence that he would be unable to do so if that is his choice. While Dr. Whelan may not have a complete recall of all medications dispensed to all patients and the medical reasons for doing so, that is hardly unique. Very few, if any, defendants would have the ability to completely recall all events that transpired over such a lengthy period. Neither due process nor Section 4241 require that a defendant have such complete recall as a condition of being found competent. In the end, Dr. Whelan can adequately assist in his own defense because the record confirms he has sufficient ability "to communicate relevant information to counsel, to understand counsel's communications, to evaluate counsel's advice, and to make decisions regarding the exercise of legal rights." *See United States v. Elliott*, No. 1:19-cr-152-TWP-MJD, 2022 WL 1444183, at *6 (S.D. Ind. May 6, 2022) (citing *Martin v. Estelle*, 546 F.2d 177, 180 (5th Cir. 1977)). Dr. Whelan demonstrated strong cognitive abilities including scoring in the high average range for verbal intelligence, average verbal abstract reasoning and fund of knowledge and superior vocabulary. (ECF No. 92 at 16.) Dr. Swanson concluded that he has the "ability to recall and relate pertinent facts and events to testify on his behalf." (*Id.* at 19.) The Court agrees with the government that Dr. Whelan "is likely more knowledgeable and capable of assisting his attorneys than many defendants who come before the Court." (ECF No. 101 at 11.)

Finally, the Court notes that Dr. Whelan's demeanor at the September hearing supports its competency finding. He took notes and was able to quietly consult with counsel. He appeared to be listening to the testimony throughout the long, four-hour hearing. His counsel insists otherwise, and obviously she has the most direct experience with him. But, of course, she is his retained counsel with a duty to advocate zealously for her position. The Court affords greater weight to Dr. Swanson's evaluation and testimony. The Court is entitled to rely more heavily on psychological reports prepared by experts who perform extensive testing that includes validity

testing and who conduct a thorough review of the medical records.  *See Elliott*, 2022 WL 1444183, at *7 (citing *People of Territory of Guam v. Taitano*, 849 F.2d 431, 432 (9th Cir. 1988)).

In conclusion, Dr. Whelan has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceeding against him.  Based on the testimony and the evidence presented, the Court concludes that the government has more than met its burden by a preponderance of the evidence that Dr. Whelan is competent to stand trial and to properly assist his attorneys in his defense.

Dated at Milwaukee, Wisconsin on October 2, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge