**Exhibit A**

Starting in at least January 2018, and continuing to December 2020, John D. Whelan and Tina M. Montezon conspired with each other (and others) to operate a business at Montezon's residence in Fond du Lac. That business, which operated primarily on Saturdays, involved Whelan prescribing controlled substances for between $200-300 cash. Montezon and Whelan knowingly and intentionally agreed to become members of the conspiracy, the aim of which was to prescribe controlled substances, outside the course of professional practice and not for a legitimate reason, in exchange for cash payments. Montezon and Whelan utilized at least three other individuals, including family members, to assist in the business. Montezon's role in the conspiracy was to schedule "patients," write prescriptions, and collect payments. To determine what prescriptions to write in exchange for cash, Montezon asked patients what controlled substances they were interested in or had taken in the past. Montezon assessed insurance requirements and wrote prescriptions, which she provided to Whelan for signature. On some occasions Whelan saw the patients in the basement of the residence. When he saw patients, Whelan did not perform any physical examinations or tests. Nor did Whelan provide mental health or counseling services. Whelan did not assess the patient's need for a particular prescription. Instead, he prescribed and signed prescriptions for controlled substances based on the patient's request and cash payments. Sometimes Montezon and Whelan issued prescriptions to patients who Whelan did not see for appointments. The business did not perform any urine drug screens to monitor the patient's compliance with medication protocols. Although Whelan and Montezon maintained patient files for individuals who were prescribed medications, those patient files contained sparse information and no justification for the medications prescribed. Whelan and Montezon also often prescribed dangerous combinations of medications, such as benzodiazepines with buprenorphine.

On four separate occasions, including on October 17, 2020, Whelan prescribed controlled substances to an undercover agent and a confidential source (J.K.) without a medical justification. On October 17, 2020, Whelan provided J.K.'s prescription for Suboxone and Methylphenidate to the undercover agent (J.M.). J.K. did not attend an appointment on that date. Despite her absence, Whelan increased her prescription for Methylphenidate from 40 tablets at 20mg each to 60 tablets of the same dosage. Neither J.K. nor J.M. requested the increase. Moreover, because of J.K.'s absence, Whelan did not assess her need for the Methylphenidate or the increase before writing the prescription. Whelan prescribed both individuals buprenorphine without diagnosing a substance abuse disorder that justified the prescription. Whelan also prescribed Adderall to the undercover agent despite failing to diagnose any need for the amphetamine prescription. Whelan's prescription of Methylphenidate to J.K. was solely based upon her request for Adderall, and a determination that Adderall would not be covered by insurance whereas Methylphenidate would be. Montezon and Whelan dispensed and distributed these controlled substances. They did so knowingly and intentionally. The prescriptions were knowingly and intentionally issued outside the course of professional practice and not for a legitimate medical reason. Whelan and Montezon knew that the substances prescribed were controlled substances.

Whelan profited over $285,00.00, in cash, from this illicit trade. When interviewed at his home in the Eastern District of Wisconsin by DEA investigators on December 3, 2020, however, Whelan lied and told the investigators that his Saturday prescribing with Montezon was not a for-profit business enterprise. This statement was false (insofar as Whelan had made hundreds of

thousands of dollars); material (insofar as DEA's investigators would have behaved differently if they had believed Whelan's lie); and defendant made this statement knowingly and willfully.

Whelan, from 2017 onward, appreciated that his Saturday prescribing practices with Montezon, and lying to the DEA about the same, was wrong.