UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Case No. 21 CR 05

JOHN D. WHELAN,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Julie Stewart and Kevin Knight, Assistant United States Attorneys, and the defendant, John D. Whelan, individually and by attorney Meggan Sullivan, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in fourteen counts of a fifteen-count indictment, which alleges violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 846, 856(a), and Title 18, United States Code, Sections 2 and 1001.

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

\*\*\*

## COUNT ONE
(Conspiracy to Distribute Controlled Substances)

**THE GRAND JURY FURTHER CHARGES THAT**:

1. Beginning by at least January 2018 and continuing through at least December 2020, in the State and Eastern District of Wisconsin,

**JOHN D. WHELAN and
TINA MONTEZON**

knowingly and intentionally conspired with each other, and with persons known and unknown to the grand jury, to distribute controlled substances, including Buprenorphine, Ritalin, Xanax, and Adderall, Schedule II, III, and IV controlled substances, outside of a professional medical practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

## COUNT FOURTEEN
(False Statement or Representation Made to a Department or Agency of the United States)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about December 3, 2020, in the state and Eastern District of Wisconsin,

**JOHN D. WHELAN**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by representing to Diversion Investigators Julius Klevinskas and Laura Reid of the Drug Enforcement Administration, that all, or most, of the individuals to whom he issues

prescriptions for controlled substances on Saturdays at 90 Clinton Street in Fond du Lac in Wisconsin are patients he sees at Affiliated Counseling Center, and that the business he runs on Saturdays at 90 Clinton Street is not a for-profit enterprise. The statements and representations were false because, as John D. Whelan then and there knew, the individuals he prescribed controlled substances to on Saturdays at 90 Clinton Street were not patients of Affiliated Counseling Center and he charged between $200-$300 in cash for his Saturday prescribing, which cash was deposited into his personal bank accounts.

In violation of Title 18, United States Code, Section 1001.

***

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

**PENALTIES**

6. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following maximum terms of imprisonment and fines: Count One: 20 years and $1,000,000; Count Fourteen: 5 years and the greater of $250,000, twice the gross pecuniary gain derived from the crime, or twice the gross pecuniary loss caused to victims. Each count also carries a mandatory special assessment of $100. Count One carries a term of supervised released of at least 3 years of supervised release, while Count Fourteen carries a term

3

of supervised release not to exceed 3 years. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment, as they pertain to the defendant, at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Conspiracy to Distribute Controlled Substances, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the conspiracy charged in Count One existed; and
> Second, the defendant knowingly and intentionally became a member of the conspiracy with the intent to further the conspiracy.

The parties understand and agree that in order to sustain the charge of Making False Statements to Federal Agents, as set forth in Count Fourteen, the government must prove each of the following propositions beyond a reasonable doubt:

> First: that the defendant made a statement or representation;
> Second, that the statement was false, fictitious or fraudulent;
> Third, that the statement or representation was material; and,
> Fourth, that the defendant acted knowingly and willfully.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

4

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offenses set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating

5

the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty. The parties are free to make all relevant conduct arguments at sentencing.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 24 under Sentencing Guidelines Manual §2D1.1(c)(13).

## Enhancements and Adjustments

### *Drug Premises*

17. The parties agree to recommend to the sentencing court that a 2-level increase for maintaining a drug premises under Sentencing Guidelines Manual § 2D1.1(b)(12) is applicable to the offense level for the offense charged in Count One.

### *Role in the Offense*

18. Pursuant to Sentencing Guidelines Manual § 3B1.1, the parties agree to recommend to the sentencing court that a 4-level increase is applicable to the offense level for the offense charged in Count One, as the defendant was an organizer or leader.

### *Special Skill*

19. The parties agree to recommend to the sentencing court that a 2-level increase for abuse of a position of trust or use of a special skill under Sentencing Guidelines Manual § 3B1.3 is applicable to the offense level for the offense charged in Count One.

### *Obstruction*

20. The parties agree to recommend to the sentencing court that a 2-level increase for attempt to obstruct the administration of justice under Sentencing Guidelines Manual § 3C1.1 is applicable to the offense level for the offense charged in Count One

6

## Acceptance of Responsibility

21.     The parties acknowledge that the Defendant is not entitled to credit for acceptance of responsibility under the Sentencing Guidelines Manual due to the applicability of the Obstruction of Justice enhancement and the conviction on Count 14.

## Sentencing Recommendations

22.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23.     Both parties reserve the right to make any recommendation regarding any and all matters not specifically addressed by this agreement.

24.     The government agrees to recommend a sentence including a term of imprisonment no higher than 48 months. The defendant agrees to recommend a sentence including a term of imprisonment no lower than 15 months. The parties have the right to argue all mitigation available under the 3553(a) factors to support their respective recommendation.

## Court's Determinations at Sentencing

25.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court

7

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

26.  The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

27.  The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

28.  The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

29.  The defendant agrees to pay the special assessment in the amount of $200 prior to or at the time of sentencing.

8

## Forfeiture

30. The defendant agrees that all properties listed in the indictment constitute the proceeds of the offenses to which he is pleading guilty, or were used to facilitate such offenses. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The defendant also agrees that the proceeds of the offense to which he is pleading guilty totaled at least $285,000. Defendant agrees to the entry of a money judgment in the amount of $285,000. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## **DEFENDANT'S WAIVER OF RIGHTS**

31. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

      c.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

      d.      At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

      e.      At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, she could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

10

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

## Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all

12

charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case and this plea agreement with my attorney, and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10/12/23

JOHN D. WHELAN
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one. I also believe my client is competent to enter this plea of guilty.

Date: 10/12/23

MEGGAN SULLIVAN
Attorney for Defendant

For the United States of America:

Date: 10/11/2023

GREGORY J. HAANSTAD
United States Attorney

Date: 10/11/2023

JULIE STEWART & KEVIN KNIGHT
Assistant United States Attorneys

14

**Exhibit A**

    Starting in at least January 2018, and continuing to December 2020, John D. Whelan and Tina M. Montezon conspired with each other (and others) to operate a business at Montezon's residence in Fond du Lac. That business, which operated primarily on Saturdays, involved Whelan prescribing controlled substances for between $200-300 cash. Montezon and Whelan knowingly and intentionally agreed to become members of the conspiracy, the aim of which was to prescribe controlled substances, outside the course of professional practice and not for a legitimate reason, in exchange for cash payments. Montezon and Whelan utilized at least three other individuals, including family members, to assist in the business. Montezon's role in the conspiracy was to schedule "patients," write prescriptions, and collect payments. To determine what prescriptions to write in exchange for cash, Montezon asked patients what controlled substances they were interested in or had taken in the past. Montezon assessed insurance requirements and wrote prescriptions, which she provided to Whelan for signature. On some occasions Whelan saw the patients in the basement of the residence. When he saw patients, Whelan did not perform any physical examinations or tests. Nor did Whelan provide mental health or counseling services. Whelan did not assess the patient's need for a particular prescription. Instead, he prescribed and signed prescriptions for controlled substances based on the patient's request and cash payments. Sometimes Montezon and Whelan issued prescriptions to patients who Whelan did not see for appointments. The business did not perform any urine drug screens to monitor the patient's compliance with medication protocols. Although Whelan and Montezon maintained patient files for individuals who were prescribed medications, those patient files contained sparse information and no justification for the medications prescribed. Whelan and Montezon also often prescribed dangerous combinations of medications, such as benzodiazepines with buprenorphine.

    On four separate occasions, including on October 17, 2020, Whelan prescribed controlled substances to an undercover agent and a confidential source (J.K.) without a medical justification. On October 17, 2020, Whelan provided J.K.'s prescription for Suboxone and Methylphenidate to the undercover agent (J.M.). J.K. did not attend an appointment on that date. Despite her absence, Whelan increased her prescription for Methylphenidate from 40 tablets at 20mg each to 60 tablets of the same dosage. Neither J.K. nor J.M. requested the increase. Moreover, because of J.K.'s absence, Whelan did not assess her need for the Methylphenidate or the increase before writing the prescription. Whelan prescribed both individuals buprenorphine without diagnosing a substance abuse disorder that justified the prescription. Whelan also prescribed Adderall to the undercover agent despite failing to diagnose any need for the amphetamine prescription. Whelan's prescription of Methylphenidate to J.K. was solely based upon her request for Adderall, and a determination that Adderall would not be covered by insurance whereas Methylphenidate would be. Montezon and Whelan dispensed and distributed these controlled substances. They did so knowingly and intentionally. The prescriptions were knowingly and intentionally issued outside the course of professional practice and not for a legitimate medical reason. Whelan and Montezon knew that the substances prescribed were controlled substances.

    Whelan profited over $285,00.00, in cash, from this illicit trade. When interviewed at his home in the Eastern District of Wisconsin by DEA investigators on December 3, 2020, however, Whelan lied and told the investigators that his Saturday prescribing with Montezon was not a for-profit business enterprise. This statement was false (insofar as Whelan had made hundreds of

thousands of dollars); material (insofar as DEA's investigators would have behaved differently if they had believed Whelan's lie); and defendant made this statement knowingly and willfully.

Whelan, from 2017 onward, appreciated that his Saturday prescribing practices with Montezon, and lying to the DEA about the same, was wrong.