UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 21-cr-0005-bhl-1

JOHN D. WHELAN,

        Defendant.

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

On March 4, 2024, this Court sentenced Defendant John D. Whelan to forty-eight (48) months' incarceration, to be followed by three (3) years' supervised release, for conspiring to distribute controlled substances outside the course of a professional medical practice and not for a legitimate medical purpose in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and making a false statement to a department or agency of the United States in violation of 18 U.S.C. § 1001. (ECF No. 155.) Whelan is currently incarcerated at FMC Rochester in Rochester, Minnesota, with a projected release date of April 16, 2027. *Find an Inmate.*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 21, 2025). On March 17, 2025, Whelan's daughters, Heather Whelan and Samantha Phillips, and Whelan's "advocate," Wendy B. Golenbock, submitted an Emergency Motion for Reduction in Sentence ("Compassionate Release" – Debilitated Medical Condition) in which they ask that Whelan be released through the compassionate release process. (ECF Nos. 163 & 163-1.) For the reasons stated below, the Court will deny Whelan's motion without prejudice.

## DISCUSSION

The Court's consideration of a compassionate release motion is a multi-step process. The statute allows the Court to modify a term of imprisonment when a defendant moves for relief after having "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," and if the defendant demonstrates

that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Sanford*, 986 F.3d 779, 781–82 (7th Cir. 2021) ("[T]he defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.") (internal quotation marks omitted)). A defendant must thus show both that he has exhausted his administrative remedies and that "extraordinary and compelling reasons warrant" a reduction in his sentence. § 3582(c)(1)(A)(i). Any reduction must be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," *id.*, including those set forth in recently amended Guideline Section 1B1.13. A district court has "discretion to evaluate multiple circumstances" and determine whether, "[i]ndividually and collectively," they amount to "extraordinary and compelling reasons" for early release. *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023).

Guideline Section 1B1.13 explains that "[e]xtraordinary and compelling reasons exist" when:

> (A) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>   (i) suffering from a serious physical or medical condition,
>   (ii) suffering from a serious functional or cognitive impairment, or
>   (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(A)–(C). The Court must also consider whether a reduction in the defendant's sentence is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), including the need for the sentence imposed to: (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

According to Bureau of Prisons (BOP) personnel, Whelan petitioned the BOP for a reduction in sentence twice, in November 2024 and December 2024. (ECF No. 165 at 6.) His first request was denied on November 27, 2024, because Whelan did not meet the criteria under "'Debilitated Medical Condition' at [that] time." (ECF No. 165-1 at 1.) The warden's memorandum further stated that despite "some medical problems," Whelan was then "independent with [his] primary activities of daily living." (*Id.*) The warden also noted that Whelan did not provide a verifiable release plan with his request. (*Id.*) As noted by the government, the BOP has not yet identified a response to Whelan's second request, and therefore, for purposes of this motion, and for expediency's sake, the government presumes that Whelan has also exhausted the administrative process with respect to this request. (ECF No. 165 at 6.)

Exhaustion aside, Whelan has not met his burden of showing extraordinary or compelling circumstances warranting his immediate release from custody or a reduction in his sentence. The government obtained Whelan's medical records from the BOP and these records show that while Whelan was hospitalized earlier this year, he was alert, articulate, and able to communicate with the BOP in March of 2025. (*See* ECF No. 165-2.) The medical records further indicate that:

- On March 11, 2025, Whelan met with BOP health provider G.L., who noted that per other staff, Whelan had "demonstrated significantly improved functional ability with transfers," "wheelchair locomotion," and "overall safety," such it may be appropriate to transfer him out of the "fall watch room." (*Id.* at 19.) During a separate consultation with P.M., Whelan complained of "dizziness," but he "appear[ed] quite well at this time and in no acute distress." (*Id.* at 21.) In fact, Whelan was "very verbal about his extreme displeasure, at length, about how unhappy he is about his diet." (*Id.*)
- On March 12, 2025, Whelan met with BOP health provider K.W. regarding depression. (*Id.* at 14.) His nurses reported that Whelan "has been at his baseline of cognition," and

K.W. described how Whelan's "mood appear[ed] pleasant and his affect [] bright." (*Id.*) Whelan was sufficiently cogent that he himself made the initial recommendation regarding the drug that was ultimately prescribed to help with his potential mood disorder. (*Id.*) The medical notes associated with this visit also describe his affect, speech, mood, thought process, thought content, perceptions, orientation, attention, and memory as "appropriate." (*Id.* at 14–15.) He was assessed to have an anxiety disorder, a major depressive disorder, and a major or mild frontotemporal neurocognitive disorder. (*Id.* at 15.)

- On March 13, 2025, Whelan consulted with K.K. of the BOP, to follow up regarding the initial dose of his anti-depression medication. Whelan was "[a]lert and oriented to person and place, in no acute distress." (*Id.* at 8.)

- On March 18, 2025, Whelan presented to P.M. of the BOP for a rash. Whelan claimed the rash began the day before and denied pain but stated that it itched. (*Id.* at 1.) P.M.'s notes indicate that Whelan: "Appears Well, Alert & Oriented to Person, Alert & Oriented to Place." (*Id.*) He was "Pleasant" and "Cooperative" and not irritable, agitated, distressed, or in pain. (*Id.*) At another point the notes again describe Whelan as "awake, alert and cooperative" and continue that, "[h]e appears well at this time and in no acute distress." (*Id.* at 2.) Whelan was prescribed a cream for the rash. (*Id.*)

According to these medical records, as of last month, March of 2025, Whelan was able to communicate his needs, his affect was "pleasant" and he appeared "awake, alert and cooperative."

Whelan's daughters and Ms. Golenbock present a much different picture, insisting that the BOP is "struggling to care for him," that he "has been hospitalized," "he can no longer communicate his issues" to his family, and "he will likely not be alive in six months." (ECF No. 163 at 1.) In a letter docketed April 11, 2025, Ms. Phillips stated that she has participated in calls with physicians caring for her father at the Mayo Clinic [in Rochester, Minnesota] and during those calls "palliative care, hospice care and comfort care measures" were discussed. (ECF No. 167-1 at 1.) Ms. Phillips claims she was informed that her father has less than six months to live. (*Id.*) Whelan's codefendant, Tina Montezon, also submitted a letter in support of compassionate release, having visited Whelan at the FMC Rochester on April 6, 2025. (ECF No. 168.) Ms. Montezon states that Whelan has lost a significant amount of weight, she estimates around 70 pounds, and that he appeared unkempt. (*Id.* at 1.) She further observed that he was sitting in a wheelchair and shaking, and he informed Ms. Montezon that he had "2 small strokes." (*Id.*) Ms. Montezon stated

that Whelan requires "assistance with a lot of things," but "[n]o assistance is given in prison." (*Id.*) Ms. Phillips has "sent in a form" for her father to complete "so that Mayo Clinic can release his medical information." (ECF No. 167-1 at 1.)

To date, the Court has received no medical documents substantiating the claims of Whelan's supporters that he suffers from a seriously debilitating medical condition or that his death is imminent or within six months. The medical evidence of record suggests otherwise. As detailed above, the medical records show that in March of 2025, the BOP appeared to be satisfactorily managing Whelan's health. Accordingly, Whelan has not met his burden of demonstrating "extraordinary and compelling circumstances" warranting his immediate release. The reports from his daughters, his advocate, and his former nurse do not overcome the reports in the medical record.

Moreover, and in any event, having reviewed the sentencing factors pursuant to 18 U.S.C. § 3553(a), the Court concludes that Whelan's 48-month sentence remains the appropriate sentence to reflect the seriousness of his offense and promote respect for the law. Whelan's advisory guideline range was 240 months, which the Court adopted without objection. (*See* ECF No. 144 ¶100; ECF No. 154 at 1.) After taking into consideration Whelan's age and health, the Court sentenced him to a sentence of forty-eight (48) months, well below the guidelines range. Whelan's sentence remains sufficient but not greater than necessary to accomplish the sentencing goal of providing just punishment for Whelan's serious offense of abusing his medical license and selling serious drugs to those addicted in our community for his personal monetary gain. If Whelan's condition worsens or he is able to provide the Court with evidence that substantiates a debilitated medical condition or terminal illness, the Court will review a second motion for compassionate release, provided that the defendant has exhausted his administrative remedies at FMC Rochester.

Accordingly,

**IT IS ORDERED** that Defendant John Whelan's motion for compassionate release, ECF No. 163, is **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin on April 21, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge